FILED
2014 Aug-25  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| DIANA K. MCCUTCHEON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV: 14-8017-IPJ |
| | ) CR: 12-183-IPJ |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM OPINION**

Petitioner Diana K. McCutcheon moves the court to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 and for an evidentiary hearing on the claims in her motion (doc. 1). Despite giving the court every assurance that she did in fact understand the charges against her, agree with the facts as recounted in the plea agreement, enter her guilty plea knowingly and voluntarily, as well as assuring the court that her attorney was "excellent," Dr. McCutcheon now claims that due to ineffective assistance of counsel, she pleaded guilty neither knowingly nor voluntarily. The court, however, remains persuaded by the numerous uncoerced admissions Dr. McCutcheon made during the plea hearing, and, therefore, finds that her § 2255 motion is due to be denied.

1

## STATEMENT OF FACTS[1]

Diane McCutcheon pleaded guilty to health care fraud and wire fraud arising out of her internal medicine and laser surgery practices. At the time of her indictment, McCutcheon was a physician who owned and operated three clinics: Elgin Quickmed Clinic, Lexington Clinic, and Lexington Cosmetic Laser Surgery, which was housed in the same building as Elgin Clinic. Plea Agreement p. 3 (crim. doc. 32). Enrolled as a health case service provider to Blue Cross Blue Shield of Alabama (BCBS) and Medicare, McCutcheon submitted claims for her services to BCBS and Medicare using numerical codes ("CPT codes"). *Id.* at 4. McCutcheon contracted with Medical Management Associates of Florence Alabama to perform her billing services. *Id.* In 2010, BCBS noticed that McCutcheon was billing an unusually high number of treatments under the CPT code 17004, which corresponded to a procedure for the destruction of 15 or more skin lesions at one time. *Id.* Upon receiving BCBS's tip-off, the FBI began investigating McCutcheon, which produced the following evidence: In 2007, McCutcheon ranked 14,273% higher in reimbursements for 17004 procedures than her counterparts and her cost for the procedure was $53.44 per patient when the

---

[1] These facts are taken from the Plea Agreement, and McCutcheon stipulated that they are substantially correct. Plea Agreement p. 7 (crim. doc. 32).

2

average physician's cost was $0.18 per patient. *Id.* at 5. In 2008, McCutcheon

ranked 22,970% higher than her peers in 17004 reimbursements and had an

average cost per patient of $88.68 compared to peers' average costs of $0.20 per

patient. *Id.* In 2009, McCutcheon ranked 18,564% higher than her peers in 17004

reimbursements and had an average cost per patient for the procedure of $66.97

compared to peers' average cost per patient of $0.26. *Id.* And in 2010,

McCutcheon ranked 18,648% higher than her peers in 17004 reimbursements and

had an average cost per patient of $195.39 compared to peers' average costs per

patient of $0.70. *Id.* at 5. In 2007, 2008, and 2009, 17004 procedures were

McCutcheon's second-most billed procedure and 17004 procedures were her most

commonly billed procedure in 2010 and 2011. *Id.* at 5–6.

In 2008, McCutcheon's 17004 bills constituted 70% of the total amount

billed to Medicare for 17004 procedures by internal medicine physicians in the

state of Alabama. *Id.* at 6. In 2009, McCutcheon accounted for 90% of those billed

procedures and in 2010, 95%. *Id.* While 17004 procedures constituted only 1.29%

of her peers' billings, they constituted 25% of McCutcheon's Medicare billings.

*Id.* Upon interviewing McCutcheon's patients, the Government learned that while

"[a] nurse practitioner or the defendant did spray some liquid nitrogen on the

patients' skin when they were in for laser treatments," this procedure did not

3

constitute a 17004 procedure, under which the defendant billed for the removal of 30 or more skin lesions through cryosurgery. *Id.*

In response to a 2010 audit by BCBS, McCutcheon hired a private consultant who reviewed McCutcheon's medical records and concluded that she had engaged in overbilling 17004 procedures and should reimburse BCBS. *Id.* A dermatologist retained as an expert also reviewed McCutcheon's records and determined that had the 17004 procedure been performed as often as claimed in the records, the patients would have sustained serious harm because it takes at least three weeks for patients to heal from cryosurgery. *Id.* at 7. McCutcheon's records indicated, however, that she performed 17004 procedures a week or two apart and on consecutive days in one case. *Id.*

McCutcheon pleaded guilty to Health Care Fraud in violation of 18 U.S.C. § 1347 (Counts 4, 5, 64 & 65) and Wire Fraud in violation of 18 U.S.C. § 1343 (Counts 31 & 86). Judgement p. 1 (crim. doc. 45). On April 23, 2013, the court entered judgment against McCutcheon, from which she did not appeal. *Id.* The court sentenced McCutcheon to a term of twelve months and one day imprisonment followed by three years of supervised release. *Id.* at 2–3. McCutcheon filed the instant § 2255 motion on April 14, 2014 (doc. 1). The court ordered the government to show cause as to why McCutcheon's motion should not

be granted (doc. 2), and the Government timely responded (doc. 9). McCutcheon's

§ 2255 motion is timely. Although McCutcheon has been released from prison

since she filed her § 2255 motion, she remains in federal custody due to her term

of supervised release. *See United States v. Brown*, 117 F.3d 471, 475 (11th Cir.

1997) ("Supervised release carries with it the possibility of revocation and

additional jail time. Therefore, we conclude, that as a person serving a term of

supervised release, Brown was 'in custody' within the meaning of § 2255 when he

filed his petition in the district court."). Having considered Dr. McCutcheon's

motion and the government's response, the court finds that McCutcheon's motion

is due to be denied for the reasons discussed below.

## DISCUSSION

Despite all indications to the contrary, Dr. McCutcheon now claims that her

attorney rendered ineffective assistance and that as a result, McCutcheon

understood neither what she was pleading guilty to nor the consequences of

entering a guilty plea. It is well-settled that "representations of the defendant, his

lawyer, and the prosecutor at a [plea hearing], as well as any findings made by the

judge accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings. Solemn declarations in open court carry a strong

presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (citation

5

omitted). *See also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)

("There is a strong presumption that the statements made during the colloquy are

true"). Additionally, where "the record refutes the applicant's factual allegations

or otherwise precludes habeas relief, a district court is not required to hold an

evidentiary hearing." *Schiriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## I.    Ineffective Assistance of Counsel

To establish an ineffective counsel claim, a defendant must show that the

lawyer's performance was so objectively unreasonable as to be deficient and that

the deficiency prejudiced the client. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). The test for deficient performance by counsel is an objective one. *Id.* at

688. Moreover, "[j]udicial scrutiny of counsel's performance must be highly

deferential" and "a court must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance." *Id.* at 689. A

petitioner establishes prejudice by showing that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010)

(quotation marks and citation omitted). In the case of guilty pleas, "to satisfy the

'prejudice' requirement, the defendant must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). If a petitioner cannot satisfy both the deficiency *and* prejudice prongs, the court must deny the requested relief. *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004).

Specifically, McCutcheon argues that her counsel rendered ineffective assistance by "failing to investigate material aspects of the charges and applicable defenses in advising [her] to plead guilty," failing to adequately prepare for the plea negotiation, "inducing [McCutcheon] to plead guilty with a promise of a sentence of probation," and "inducing [her] to plead guilty with threats of a draconian sentence." § 2255 Motion pp. 5, 13, 16, 17 (doc. 1). As an initial matter, despite Dr. McCutcheon's current allegations of her counsel's deficiencies, at the plea hearing she expressed that she had no problems with her counsel's handling of her case. McCutcheon even went so far as to praise her lawyer's performance:

> THE COURT: Okay. Did you read through these documents with Mr. Tuten before you signed them?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did you have sufficient time to talk to him about anything and everything that was in those documents?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Have you had enough time to talk to Mr. Tuten

about the facts of this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had enough time to talk to him about your constitutional rights?

THE DEFENDANT: Yes, Your Honor.

THE COURT: . . . [A]re you satisfied with the services he has provided you as your lawyer in this case?

THE DEFENDANT: Yes, Your Honor.
. . .

THE COURT: Okay. One of the waivers includes a waiver of a right to file a motion pursuant to 28 U.S.C. Code, Section 2255.
    So basically, this is your last chance to tell me if you have any complaints about anything Mr. Tuten has done or not done in connection with being your lawyer in this case.

THE DEFENDANT: No. *He's been an excellent lawyer*.

Plea Hearing Transcript pp. 5–6, 7 (crim. doc. 49) (emphasis added). But, more importantly, even were the court to accept McCutcheon's factual allegations as true, McCutcheon's ineffective assistance of counsel claims fail because she cannot establish that she has been prejudiced by any of her attorney's alleged deficiencies. In other words, McCutcheon cannot establish that but for her attorney's alleged deficiencies, she would not have pleaded guilty and would have insisted on going to trial.

8

A.      **Counsel's Failure to Properly Negotiate Plea or Investigate Material Aspects of Charges**

McCutcheon's extensive factual recitations in support of this claim, § 2255 Motion pp. 5–12 (doc. 1), are squarely refuted by her own representations at the plea and sentencing hearings.[2] For example, McCutcheon claims that "[d]efense counsel rendered ineffective assistance in advising Movant to plead guilty when the overwhelming evidence indicating [sic] that there was no knowing and intentional criminal intent on the part of Movant, but rather a staggering number of billing discrepancies." § 2255 motion p. 8 (doc. 1). Yet the court explicitly informed McCutcheon that she was charged with knowing and willful violations, not mistaken error, and McCutcheon voiced no objections:

> THE COURT: And with respect to the charge of wire fraud – wire fraud. The Government would have to prove that on or about the times and places set out in the indictment, Counts Number 31 and 86, that you knowingly devised or participated in a scheme to defraud or to obtain money or property by using false pretenses, representations, or promises.
>
> *I'm just telling you right now knowingly means not as a result of*

---

[2] The court also agrees with respondent's assertion that petitioner's factual allegations are conclusory in that they are supported by nothing other than petitioner's own averments and petitioner's claims therefore do not warrant an evidentiary hearing. *See Lynn v. United States*, 365 F.3d 1225, 1238–39 (11th Cir. 2004) (finding no evidentiary hearing necessary where affidavits submitted by petitioner amounted to mere conclusory allegations); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing, however, when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (emphasis in original) (quotation marks and citation omitted).

*mistake.*

The Government would further have to prove that the false pretenses, representations, or promises were about a material fact.

*The Government would have to prove that you acted with the intent; that is, purpose, to defraud*; and fourthly, the Government would have to prove that you transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out a scheme to defraud.

With respect to healthcare fraud, which is what is charged in Count 4, 5, 64, and 65, the Government would have to prove that on our about the time and place specified in the indictment in these counts that you *knowingly – and again, that means not as a result of mistake –* executed or attempted to execute a scheme or artifice to defraud a healthcare benefit program by means of false and fraudulent pretenses, representations, or promises.

And I want to say something here. We're talking about both Medicare and Blue Cross Blue Shield.

The Government would have to further show that these false or fraudulent pretenses, representations, or promises related to a material fact.

*The Government would have to show that you acted willfully and intended to defraud. And willfully is really just another word to say intentionally or purposefully. That was your purpose, to defraud.* That's what the Government would have to show. And that you did so in connection with a delivery of or payment for healthcare benefits, items, or services.

Do you understand that's what the Government would have to prove beyond a reasonable doubt?

THE DEFENDANT: Yes, Your Honor.

Plea Hearing Transcripts pp. 16–17 (crim. doc. 49) (emphasis added).

McCutcheon also asserts that "[h]ad defense counsel done the most superficial investigation, he would have learned that the reason Movant was red-flagged was due to Medical Management Associates' billing errors and not to allegedly fraudulent billing practices by Movant (which the overwhelming weigh of evidence did not support)." § 2255 Motion p. 10 (doc. 1). Yet the court asked McCutcheon whether the facts recounted in the Plea Agreement, which detailed all of the government's evidence asserting McCutcheon's billing fraud, were substantially correct. And McCutcheon responded that those facts detailing her fraudulent billing practices were, in fact, substantially correct:

> THE COURT: Okay. Now, I'm going to ask you a couple of things about the plea agreement. Okay?
>
> Do you see the factual basis for the plea that begins on Page 3 and goes on to Page 4, goes on to Page 5, goes on to Page 6, and ends on Page 7?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Do you see that on Page 7, you have stipulated that the facts stated in the factual basis for the complaint are substantially correct, and you have stipulated that the Court can use these facts in calculating the defendant's sentence?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Has it been explained to you and do you

11

understand that that means that the Court can take all those facts in consideration without additional proof at the sentencing?

THE DEFENDANT: Yes, Your Honor.
. . .

THE COURT: And is what is stated in the factual basis of the plea or for the plea in the plea agreement, is that correct as to what you did?

THE DEFENDANT: Yes, Your Honor.

Plea Hearing Transcript pp. 20–21, 24 (crim. doc. 49). More importantly, at the

sentencing hearing, Dr. McCutcheon informed the court that she took full

responsibility for all of her offices' billing violations. Specifically, McCutcheon

admitted that she was "going to take the blame for everything in [her] office," that

"there's no one to blame except for [her]," that she's "the person that made the

mistake," that she "failed terribly in the running of her business" and that she

"owe[d] the Government a lot of money." Sentencing Hearing Transcript pp. 7–8

(crim. doc. 50). Although Dr. McCutcheon claims that "[t]he result of defense

counsel's incompetent advice was that Movant misapprehended the critical

elements of the charged offenses . . . ." § 2255 Motion p. 12 (doc. 1), this court

informed McCutcheon of the material aspects of the charges against her and

McCutcheon stated that she understood those charges. *See* Plea Hearing Transcript

pp. 16–17 (crim. doc. 49).

12

Dr. McCutcheon also conveyed that she understood the consequences of foregoing a trial and had no objections or questions.

> THE COURT: Okay. Okay. Let me just go back to the certification of rights form. Do you understand that when charges are made against you in an indictment such as this that you have a right to plea not guilty?
>
> THE DEFENDANT: Yes, Your Honor.
> . . .
>
> THE COURT: And that you have a right to plea guilty, which is what you're in the process of doing?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And do you understand that if you ple[a]d not guilty, you would have a right to a speedy and a public trial by a jury where a jury would come in and determine whether or not the Government has met its burden of proof to prove you guilty of the charges beyond a reasonable doubt?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you would have a right to face all witnesses and accusers who testify against you and have them cross-examined by your lawyer while they testify under oath?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you would have a right to use the Court's subpoena powers to subpoena witnesses to come in and give evidence in your favor and to bring into court such other evidence in your favor as you may have and choose?
>
> THE DEFENDANT: Yes, Your Honor.

THE COURT: And at such a trial, you would have a right to testify in your own behalf. But if you chose not to testify, you could not be forced to testify by anyone?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And you would have a right to require that the Government prove your guilt beyond a reasonable doubt before you could be adjudged guilty?

THE DEFENDANT: Yes, Your Honor.

Plea Hearing Transcript pp. 14–16 (crim. doc. 49).

Relying on McCutcheon's representations at the plea and sentencing hearings, the court finds that there is no reasonable probability that absent McCutcheon's counsel's alleged deficiencies in negotiating the plea agreement and investigating material aspects of the charges, Dr. McCutcheon would not have entered the Plea Agreement or guilty plea. Accordingly, the court finds that McCutcheon has failed to establish that she was prejudiced by counsel's alleged deficiencies.

### B.   Counsel's Failure to Adequately Prepare for Plea Negotiations[3]

At the outset, the court notes that the facts that McCutcheon claims her counsel failed to uncover were in fact uncovered and presented to the court. For

---

[3] McCutcheon's claim here overlaps with her previous claim, but the court will address it separately in the interest of clarity.

14

instance, despite arguing in her § 2255 Motion that her counsel was ineffective for failing to uncover the information that McCutcheon "would often pray with troubled patients," § 2255 Motion p. 13 (doc. 1), McCutcheon told the court herself at the sentencing hearing that she prays with her patients. Sentencing Hearing Transcript p. 9 (crim. doc. 50). Similarly, Carole Medley, a Lauderdale County district judge, and Keith Medley, an attorney, also testified at the sentencing hearing that McCutcheon cares greatly for her patients, was a thorough doctor, and volunteered abroad, facts that McCutcheon claims her counsel failed to unearth. *Id.* at 11–15. Other than the facts concerning her good character, which were largely presented to the court at the sentencing hearing, the remaining facts that McCutcheon alleges are conclusory and/or unequivocally refuted by her representations at the plea and sentencing hearings. *See supra* Part I.A.

More importantly, McCutcheon cannot establish that she was prejudiced by her attorney's failure to adequately prepare for the plea negotiation. For example, McCutcheon argues that her defense counsel never showed her the evidence that the government had against her. § 2255 Motion p. 15 (doc. 1). Yet the court asked Dr. McCutcheon if the facts as recounted in the Plea Agreement, which detailed the government's evidence against McCutcheon, were substantially correct and she stated that they were. Plea Hearing Transcript pp. 20–21, 24 (crim. doc. 49).

15

Additionally, at the plea hearing, this court informed McCutcheon of the charges

against her, what the government would have to prove, and the consequences of

foregoing a trial. Plea Hearing Transcript pp. 16–17 (crim. doc. 49). If

McCutcheon had concerns about how her attorney prepared for the plea

negotiations, any of the aspects of the charges against her, or the consequences of

pleading guilty, McCutcheon had numerous opportunities at the plea hearing to

voice those objections or concerns to the court. Instead, McCutcheon stated that

her lawyer had been excellent and she voiced no objections or questions about the

Plea Agreement, the facts recounted therein, the guilty plea, or the consequences

of pleading guilty.

The court is equally unpersuaded by McCutcheon's claim that she did not

understand her Guilty Plea Advice of Rights Certification because her lawyer

failed to explain to her, as a layperson, the import of the form and the consequence

of her signing it. *See* § 2255 Motion p. 15 (doc. 1). At the time of the Plea

Hearing, Dr. McCutcheon was a fifty-five year old physician. Plea Hearing

Transcript p. 5 (crim. doc. 49). Letters to the court in support of Dr. McCutcheon

also indicated that she was a skilled and thoughtful physician. Sentencing Hearing

Transcript pp. 21–22 (crim. doc. 50). Yet McCutcheon contends that she did not

understand the Advice of Rights Certification which contained such basic

16

statements as "I have had enough time to discuss the case with my attorney and to discuss the facts of my case and my constitutional rights. I am satisfied with the services of my attorney and I have no complaints as to the way he/she has handled my case." Guilty Plea Advice of Rights Certification p. 1 (crim. doc. 31). The form also plainly stated "I understand that the Court must be satisfied that I am pleading guilty freely, voluntarily and of my own free will. I understand that I have a duty to inform the Court if, at any time during this proceeding, I do not understand something that is said or done." *Id.* at 2. These statements comprised no grandiose legal terms or concepts, and the claim that a person of Dr. McCutcheon's education level and work experience would not be able to understand such affirmations is, quite simply, absurd.[4] Importantly, the Advice of Rights form also stated in capital letters right above McCutcheon's signature: "I HAVE READ THE ABOVE OR IT WAS READ TO ME AND I UNDERSTAND IT. I DO NOT HAVE ANY QUESTIONS ABOUT ANY OF MY RIGHTS AS STATED ABOVE. I AM NOT UNDER THE INFLUENCE OF DRUGS, ALCOHOL OR MEDICINE. MY SIGNATURE APPEARS BELOW." *Id.* at 5. Accordingly, the court finds that there is no reasonable probability that absent McCutcheon's

---

[4] The court finds Dr. McCutcheon's proposition that she did not understand the Guilty Plea Advice of Rights Certification even more preposterous considering that McCutcheon filed such an intricate and verbose § 2255 Motion *pro se*.

17

attorney's alleged failure to adequately prepare for the plea negotiations, McCutcheon would not have entered the guilty plea.

### C.    Counsel's Promise of a Sentence of Probation

Further, McCutcheon cannot establish prejudice stemming from her attorney's alleged promise of a sentence of probation.  Once more, the court finds that McCutcheon's "supporting facts" are conclusory allegations and/or are wholly refuted by her representations at the plea and sentencing hearings. *See supra* Part I.A. Additionally, at the plea hearing, the court informed Dr. McCutcheon of the potential penalties for the crimes with which she was charged, how the sentencing guidelines were calculated, and explained to her that the sentencing guidelines were advisory in nature only. Plea Hearing Trancript pp. 10–11 (crim. doc. 49). McCutcheon expressed that she understood the sentencing guidelines and the potential consequences of her charges, *id.*, and she still pled guilty. Accordingly, the court finds that there is no reasonable probability that had McCutcheon's attorney not promised her a sentence of probation, McCutcheon would have forgone the guilty plea.

### D.    Counsel's Threat of a Draconian Sentence

Finally, McCutcheon cannot establish that she was prejudiced by her counsel's alleged threats of a draconian sentence. Once more, this court informed

McCutcheon of the elements of the crimes with which she was being charged, the potential punishments for the crimes, the consequences of foregoing a trial, and that the sentencing guidelines were advisory in nature only. *See supra* Parts I.A–C. Had McCutcheon felt threatened with a draconian sentence, she had multiple opportunities to voice such concerns to this court. Instead, McCutcheon conveyed that she understood the charges against her, had ample time to review those charges with her attorney, was satisfied with her attorney's excellent performance, understood the consequences of foregoing a trial, understood the potential penalties that her crimes carried, and understood that the sentencing guidelines were advisory in nature only. *Id.* Thus McCutcheon utterly fails to establish that there is a reasonable probability that absent her attorney's alleged threat of a draconian sentence, McCutcheon would not have entered the Plea Agreement or guilty plea.

Because McCutcheon cannot establish that she was prejudiced by any of her attorney's alleged deficiencies, the court finds that McCutcheon did not suffer ineffective assistance of counsel.

## II. Knowing and Voluntary Plea

Intertwined with Dr. McCutcheon's ineffective assistance of counsel claims are her claims that she did not enter the Plea Agreement or her guilty plea

19

knowingly and voluntarily. McCutcheon claims that due to ineffective assistance of counsel, she lacked the knowledge to enter the plea knowingly and voluntarily. Having already determined that Dr. McCutcheon's ineffective assistance of counsel claims fail, the court now reiterates that Dr. McCutcheon did enter a knowing and voluntary guilty plea and the court is satisfied that McCutcheon also knowingly and voluntarily executed the Plea Agreement.

As discussed above, the court simply finds it inconceivable that McCutcheon did not understand her Guilty Plea Advice of Rights Certification. *See supra* Part I.B. More importantly, Dr. McCutcheon resolved any questions about the knowing and voluntary nature of her Plea Agreement and guilty plea at the plea hearing. At the hearing, the court reminded McCutcheon that should she change her mind about entering the plea, she was free to continue with the trial as planned:

> THE COURT: . . . And finally, if during this proceeding you change your mind and you don't want to plead; you want to have a trial Monday like we had talked about, had a pretrial about, you just tell me, and I will not cancel the jury. I will have the trial Monday like we have scheduled.
>      I am not trying to get you to do anything one way or another. It's your decision. Okay?
>
> THE DEFENDANT: Yes, ma'am.

Plea Hearing Transcript pp. 4–5 (crim. doc. 49).

20

Further, the court specifically asked McCutcheon whether she was entering her plea freely and voluntarily. McCutcheon responded that she was entering the plea voluntarily and that she had read and understood the charges in her indictment:

THE COURT: Okay. And do you understand that the Court must be satisfied that you're entering this plea freely and voluntarily?

THE DEFENDANT: *I've entered it freely and voluntarily.*

THE COURT: And you have discussed the consequences of this plea with Mr. Tuten?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand them?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And do you understand that you're charged in the indictment in these particular six charges that are mentioned in the plea agreement with the offenses of healthcare fraud and wire fraud?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Would you like for me to read you those charges in the indictment? Or have you already read them?

THE DEFENDANT: *We have a copy, and I read them.*

THE COURT: Okay. And has your lawyer explained to you what the elements of these offenses are and what the punishment is, and do you understand that?

THE DEFENDANT: Yes, Your Honor.

*Id.* at 8–9 (emphasis added). McCutcheon also expressed no objections to the factual basis for the Plea Agreement and she stated that she understood that this court would consider those stipulated facts in its sentencing. *Id.* at 20–21, 24.

Before taking Dr. McCutcheon's guilty plea, the court once more asked McCutcheon if she had questions about the Plea Agreement and ensured that she was entering the agreement knowingly and voluntarily:

THE COURT: Okay. Okay. Do you have any questions about the plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Did you sign that voluntarily, as well?

THE DEFENDANT: Yes, Your Honor.

*Id.* at 23.

The court reiterates that at the sentencing hearing, Dr. McCutcheon accepted the blame and responsibility for everything that occurred in her office, noting that no one else was to blame and that she owed the government a lot of money. Sentencing Hearing Transcript pp. 7–8 (crim. doc. 50). In this case, the Plea Colloquy served its core principles of ensuring that McCutcheon entered her plea free from coercion, that she understood the nature of the charges, and that she

22

understood the consequences of her plea. *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (noting that courts accepting guilty pleas are subject to Rule 11 and the three core principles served by the Plea Colloquy). The representations Dr. McCutcheon made during the plea and sentencing hearings were nothing if not confirmation that she entered the agreement and guilty plea both knowingly and voluntarily. Further, because the record refutes Dr. McCutcheon's factual allegations, her request for an evidentiary hearing is due to be denied.

## CONCLUSION

Based upon a consideration of the foregoing, the court finds that petitioner's motion and request for evidentiary hearing are due to be and hereby are **DENIED**.

**DONE** and **ORDERED** this 25th day of August 2014.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE